IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

WILLIAM P. JACKSON,      :     CIVIL NO. 1:CV-05-1680
        Plaintiff,      :
             :     (Judge Kane)
        v.      :
             :
PENNSYLVANIA DEPARTMENT OF   :
CORRECTIONS, et al.,      :
        Defendants

**M E M O R A N D U M**

**I.**    **Background**

      Plaintiff William P. Jackson is an inmate currently confined at the State Correctional Institution at Coal Township (SCI-Coal Township), Pennsylvania.  He filed this civil rights complaint pursuant to 42 U.S.C. § 1983 on August 17, 2005.  Named as Defendants are the Pennsylvania Department of Corrections and the following SCI-Coal Township employees: Joe Geragi and Brian Davis, physicians assistants; Joseph Piazza, Superintendent; Correctional Officers Clark and Sipe; and Gene Mull, Drug and Alcohol Supervisor.  In the complaint Plaintiff claims that despite his medical condition, Defendants failed to provide him with his approved lower bunk status and forced him to work in a prison job regardless of his alleged "no work/no heavy lifting" medical restriction.  He seeks monetary damages as relief.  An Order was issued on August 19, 2005, directing service of the complaint.  On September 20, 2005, Defendants Geragi and Davis filed a motion to dismiss the complaint.  (Doc. 11.)  A Memorandum and Order was issued on July 13, 2006, granting this motion.  (Doc. 40.)  On October 13, 2005, the remaining Defendants filed a motion to dismiss the complaint (Doc. 17) which is presently before the Court for consideration.  For the reasons that follow, the motion will be granted in part and denied in part.

## II.   Discussion

### A.   Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) allows a defendant, in response to a complaint, to file a motion to dismiss a complaint for "failure to state a claim upon which relief can be granted . . . ."  A motion to dismiss should not be granted if "under any reasonable reading of the pleadings, the plaintiff [ ] may be entitled to relief . . . ." Langford v. City of Atlantic City, 235 F.3d 845, 847 (3d Cir. 2000).  In making that decision, the court must accept as true all well-pleaded allegations in the complaint, Maio v. Aetna, Inc., 221 F.3d 472, 481-82 (3d Cir. 2000), and construe any reasonable inferences to be drawn from them in the plaintiff's favor.  See United States v. Occidental Chemical Corp., 200 F.3d 143, 147 (3d Cir. 1999).  Consequently, the court need not accept "bald assertions" or "legal conclusions."  Morse v. Lower Merion School District, 132 F.3d 902, 906 (3d Cir. 1997).  Likewise, the court need not "conjure up unpled allegations or contrive elaborately arcane scripts" in order to breathe life into an otherwise defective complaint.  Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988).  A complaint that sets forth facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend.  Grayson v. Mayview State Hospital, 293 F.3d 103, 106 (3d Cir. 2002); Estelle v. Gamble, 429 U.S. 97, 107-08 (1976).

### B.   Allegations in Complaint

The pending motion to dismiss is filed on behalf of the Department of Corrections and the following SCI-Coal Township employees: Joseph Piazza, Superintendent; Correctional Officers Clark and Sipe; and Gene Mull, Drug and Alcohol Supervisor.  The allegations set forth in the complaint are as follows.  On September 13, 2004, while being transported to SCI-Coal Township by the Allegheny County Sheriff Department, the vehicle Plaintiff was riding in was involved in an

2

accident.  Plaintiff sustained a bruised forehead and whiplash.  On September 18, 2004, Defendant

Geragi, a physician's assistant at SCI-Coal Township, agreed to Plaintiff's request for lower bunk

status due to his injuries.  On September 21, 2004, Plaintiff had not yet received the lower bunk

status and complained to Defendant Davis, also a physician's assistant.  Davis agreed  that a lower

bunk assignment was in order pending the outcome of x-rays performed on September 16, 2004, to

prevent any aggravation of his injuries.

On September 26, 2004, Plaintiff, who still had not been reassigned to a lower bunk, fell

from his upper bunk injuring his knee, elbow and side, as well as aggravating his pre-existing

injuries.  The following day Davis informed Plaintiff that Geragi stated the matter had been taken

care of the previous day and, as such, he did not pursue the matter further.  Davis promised to handle

the paperwork immediately to have him moved to a lower bunk, and further informed Plaintiff that

the x-rays did reveal positive results for muscle spasms of the neck and back.  On September 29,

2004, because Plaintiff was still in an upper bunk, Davis went to the Restricted Housing Unit

Lieutenant on duty and had Plaintiff moved to a lower bunk.

On April 13, 2005, Plaintiff was transferred from the RHU to the "Therapeutic Community

Unit" to begin a drug and alcohol program.  The following day, Plaintiff informed Defendant Mull

about the accident and the injuries he sustained.  Mull acknowledged that he was aware of Plaintiff's

"medical situation" and would help accommodate him.  On April 18, 2005, Plaintiff was assigned a

job which required lifting heavy chairs.  Mull told Plaintiff that unless he performed the job he

would face consequences which included his termination from the drug and alcohol program.

Plaintiff thereafter moved the chairs as directed, and was injured.  The following day he saw the

prison doctor who placed Plaintiff on medical restrictions which included no heavy lifting and

3

medical lay in to avoid further injury.  As a result, Plaintiff 's participation in the Therapeutic

Community Program was terminated.

On May 17, 2005, Plaintiff was transferred to Block F.  Approximately one week later he

was informed that he had been assigned a "block" job.  Plaintiff informed Defendants Sipe and Clark

of his medical restrictions regarding no work or heavy lifting.  On June 4, 2005, Plaintiff was

directed to do cell cleaning which involved carrying mop buckets full of water up and down a flight

of stairs.  The correctional officer on duty stated that he knew nothing about Plaintiff's medical

restrictions and threatened Plaintiff with the termination of his job and a misconduct if he refused to

do the work.  On June 11 and 18, 2005 Plaintiff performed the assigned work.  On June 18, 2005 he

sustained injury while carrying the full bucket up and down the stairs.

On June 19, 2005, Plaintiff wrote to the Medical Administrator and prison doctor requesting

they send verification of his medical restrictions to the Block Officers.  On June 20, 2005, he put in

for sick call due to the pain he was experiencing.  He was unable to make a sick call appointment the

following day because he was taken to Allegheny County for court proceedings.  Upon his return on

June 28, 2005, another sick call slip was submitted.  He was seen on June 29, 2005 in the medical

department.  Plaintiff's medications were renewed, and he was referred to the "M.D. line."  (Doc. 1,

Compl. at ¶ 23.)  On this date Plaintiff also sent a request to the medical director regarding his

existing medical restrictions and the issue of work.

On July 9, 2005, after being threatened with a misconduct, Plaintiff was again forced to

work.  He claims that he reaggravated his injuries and sustained new injuries.  On July 12, 2005,

Plaintiff was seen by Dr. Soloman for complaints of back and neck pain due to lifting/carrying the

mop buckets.  Soloman informed Plaintiff he should not be working based upon the medical

4

restrictions previously issued by Dr. Sten and ordered new x-rays to be taken.

On July 13, 2005, Plaintiff received a copy of a letter his attorney sent to Superintendent Piazza informing him of Plaintiff's injuries, and requesting him to intervene in the prison job situation in light of the issued medical restrictions.  On July 16, 2005, Plaintiff was once again forced to perform the cell cleaning duties by an unidentified correctional officer who refused to call the medical department to verify whether Plaintiff was on medical restriction.  Plaintiff states this activity further aggravated his injuries.

Due to the letter written to Superintendent Piazza, Plaintiff was finally staffed out of his prison job.  He was thereafter seen by Dr. Soloman on July 26, 2005.  He was informed that his x-rays reveal muscle spasms in the lower back that had not been evident on his earlier x-ray taken prior to his cell cleaning job assignment.  Plaintiff states that he learned on August 8, 2005, from the medical director that all medical restrictions are placed in a computer system that all officers have the ability to access.

### C.   Analysis

Based upon the foregoing allegations, Plaintiff claims that Defendants Department of Corrections, Mull, Sipe, Clark and Piazza violated his Eighth Amendment right to adequate medical care.  In Rouse v. Plantier, 182 F.3d 192 (3d Cir. 1999), the Court of Appeals for the Third Circuit set forth the standard necessary to establish a claim for deliberate indifference to a prisoner's medical needs. The Court stated:

> The Eighth Amendment prohibits the imposition of unnecessary and wanton infliction of pain contrary to contemporary standards of decency. In Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), the Supreme Court held that the Eighth Amendment's prohibition against cruel and unusual punishment requires prison officials to provide basic medical treatment to those whom it has incarcerated. The Court articulated the standard to be used: In order to state a

5

> cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to
> evidence deliberate indifference to serious medical needs. It is only such indifference
> that can offend "evolving standards of decency" in violation of the Eighth
> Amendment. Id. at 106, 97 S.Ct. 285. Therefore, to succeed under these principles,
> plaintiffs must demonstrate (1) that the defendants were deliberately indifferent to
> their medical needs and (2) that those needs were serious.... It is well-settled that
> claims of negligence or medical malpractice, without some more culpable state of
> mind, do not constitute "deliberate indifference." As the Estelle Court noted: "[I]n the
> medical context, an inadvertent failure to provide adequate medical care cannot be
> said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant
> to the conscience of mankind,'" Id. at 105, 97 S.Ct. 285... Deliberate indifference,
> therefore, requires obduracy and wantonness . . . which has been likened to conduct
> that includes recklessness or a conscious disregard of a serious risk.. . . .

Id. at 197 (Some internal citations and quotations omitted).

In moving to dismiss the complaint, Defendants first argue that the Department of

Corrections is not a person for purposes of § 1983 liability.  It is well-settled that neither a state nor

its agencies is a "person" as that term is used in 42 U.S.C. § 1983 and as such not subject to suit.

See Hafer v. Melo, 502 U.S. 21, 25-27 (1991).  The Pennsylvania Department of Corrections is an

agency of the Commonwealth of Pennsylvania.  Therefore, relief under § 1983 is unavailable for

Plaintiff against the DOC.  See Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989).

Accordingly, the Defendants' motion to dismiss will be granted with regard to all claims against the

DOC.

Defendants also move for the dismissal of all claims against the remaining corrections

defendants.  In the complaint, the only allegations set forth against Defendant Piazza, Superintendent

at SCI-Coal, are that he was sent a letter sometime on or about July 13, 2005 by Plaintiff's attorney

advising him of the existing medical restrictions/prison job situation.  Plaintiff admits in his

complaint that pursuant to said letter, Piazza had Plaintiff staffed out of his prison job on July 19,

2005.  Clearly Plaintiff fails to state an Eighth Amendment claims of deliberate indifference against

6

Piazza based upon these allegations.  To the contrary, once Piazza was notified of the situation, he responded and had Plaintiff removed from his job.  Accordingly, the motion to dismiss will be granted with respect to Defendant Piazza.

Plaintiff also fails to state a claim against Defendant Mull, the Drug and Alcohol Supervisor. When transferred to Mull's unit on April 13, 2005, Plaintiff had been seen by the medical department and had a lower bunk assignment due to the injuries he sustained in the accident and the subsequent fall from the upper bunk.  While Mull acknowledged being aware of this history, Plaintiff admits that he did not have any medical restrictions at the time Mull assigned to him the job of moving chairs.  It is well settled that if a prisoner is under the care of a medical expert, a non-medical prison official cannot be considered deliberately indifferent for failing to respond to an inmate's medical complaints "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner. . . ."  Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004); Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993)(prison personnel who are not physicians cannot be considered deliberately indifferent for failing to respond to an inmate's medical needs when the inmate is already receiving treatment from the prison's medical staff).  It was not until after he moved the chairs, was injured and went to the medical department that Plaintiff was placed on medical restrictions which included no heavy lifting and medical lay in to avoid further injury.  There are no allegations in the compliant which suggest that Mull was deliberately indifferent in assigning Plaintiff a prison job.  While Plaintiff was on lower bunk status, he had been seen by the medical department and did not have any medical restrictions at the time regarding lifting or working.  The complaint lacks any allegations that Mull either denied or delayed Plaintiff any

7

access to medical care or intentionally interfered with any medical treatment prescribed for Plaintiff.

As such, Plaintiff fails to state a claim against Mull, and he will be dismissed from this action.

The only remaining Defendants are correctional officers Sipe and Clark.  In applying the

12(b)(6) principles set forth above in light of the allegations set forth in the complaint, it is clear that

the action must proceed against both Defendants.  Plaintiff was assigned the block job of cell

cleaning by Sipe and Clark after the medical restrictions were issued by the prison medical

department.  Despite informing these Defendants of the medical restrictions of no work/heavy

lifting,  Plaintiff was required to perform the assigned work on several occasions.[1]  According to

Plaintiff, the work included lifting and carrying heavy buckets of water up and down flights of stairs.

Accepting Plaintiff's facts as true, as the Court must in evaluating a motion to dismiss, the Eighth

Amendment claims alleged against Defendants Sipe and Clark mut proceed.  An appropriate Order

follows.

## III.   Order

**AND NOW, THEREFORE, THIS 22nd DAY OF AUGUST, 2006,** in accordance with the

foregoing Memorandum, **IT IS HEREBY ORDERED AS FOLLOWS:**

1.      The motion to dismiss filed by the Corrections Defendants (Doc. 17) is **granted in part and denied in part.**  The motion is granted to the extent that all claims set forth against the Department of Corrections, Defendant Piazza and Defendant Mull are dismissed.  The motion is denied with regard to the claims set forth against Defendants Sipe and Clark.

2.      Within twenty (20) days from the date of this Order, Defendants Sipe and Clark shall

---

[1]  Reading the complaint liberally and without passing any judgment as to the ultimate merits of the case, Plaintiff appears to allege that Defendants Sipe and Clark were responsible for this job assignment and Plaintiff's continuation is this job, despite their knowledge of his medical restrictions.

file an answer to the complaint.


s/ Yvette Kane
YVETTE KANE
United States District Judge