IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM P. JACKSON, | : | CIVIL NO. 1:CV-05-1680 |
| Plaintiff, | : | |
| | : | (Chief Judge Kane) |
| v. | : | |
| | : | |
| PENNSYLVANIA DEPARTMENT OF | : | |
| CORRECTIONS, et al., | : | |
| Defendants | | |

# **M E M O R A N D U M**

## I. **Background**

Plaintiff William P. Jackson is an inmate currently confined at the State Correctional Institution at Coal Township (SCI-Coal Township), Pennsylvania. He filed this civil rights complaint pursuant to 42 U.S.C. § 1983 on August 17, 2005. Named as Defendants are the Pennsylvania Department of Corrections and the following SCI-Coal Township employees: Joe Geragi and Brian Davis, physicians assistants; Joseph Piazza, Superintendent; Correctional Officers Clark and Sipe; and Gene Mull, Drug and Alcohol Supervisor. In the complaint Plaintiff claims that despite his medical condition, Defendants failed to provide him with his approved lower bunk status and forced him to work in a prison job regardless of his alleged "no work/no heavy lifting" medical restriction. He seeks monetary damages as relief. A motion to dismiss filed by Defendants Geragi and Davis was granted on July 13, 2006. (Doc. 40.) On August 22, 2006, a motion to dismiss filed by the remaining Defendants was granted in part and denied in part. (Doc. 42.) The motion was granted to the extent that all claims filed against the Department of Corrections, Defendant Piazza and Defendant Mull were dismissed. The motion was denied with regard to the claims against Defendants Sipe and Clark. On December 21, 2006, these remaining Defendants filed a motion for

summary judgment. (Doc. 59.) Along with the motion, Defendants submitted a supporting statement of material facts, brief and evidentiary materials. (Docs. 60-62.) When the relevant time period passed for Plaintiff to submit his opposition to the motion, the Court issued an Order on January 18, 2007, affording Plaintiff twenty (20) days to respond to the motion. He was warned that the failure to do so would result in the summary judgment motion being deemed unopposed and addressed on the merits. The time period for submitting opposition to the motion has long expired. For the reasons that follow, the motion will be granted.

**II.   Discussion**

    **A.   Motion for Summary Judgment**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law" Fed. R. Civ. P. 56©. The party moving for summary judgment bears the initial responsibility of stating the basis for his motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material facts. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party can discharge that burden by "showing . . . that there is an absence of evidence to support the nonmoving party's case." Id. at 325. When determining whether there are any genuine issues of material fact, the court draws all inferences in favor of the non-moving party. Pa. Prot. & Advocacy, Inc. v. Pa. Dept. of Pub. Welfare, 402 F.3d 374, 379 (3d Cir. 2005)(citations omitted). Although the non-moving party receives the benefit of all factual inferences in the court's consideration of a motion for summary judgment, the nonmoving party must point to some evidence in the record that creates a genuine issue of material fact. Id. (citing Fed. R. Civ. P. 56(e)). The nonmoving party must rebut the

2

motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986); Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989).  In addition, if the nonmoving party has the burden of proof at trial, that party must set forth facts "sufficient to establish the existence of an element essential to that party's case."  Celotex Corp., 477 U.S. at 322.

### B.     Statement of Facts

The pending motion for summary judgment is filed on behalf of the two remaining Defendants - Correctional Officers Sipe and Clark.  In support of their motion, Defendants submit a statement of undisputed facts.  Because Plaintiff has failed to file an opposing statement of facts, as required by M.D. Pa. Local Rule 56.1, the following facts submitted by Defendants are deemed admitted.  These facts are supported by Plaintiff's deposition transcript and the sworn declarations of Sipe and Clark.  (Doc. 62.)

At all times relevant to the claims against Sipe and Clark, Plaintiff was confined on F-block at SCI-Coal Township.  During this time period, Sipe was employed as a Corrections Officer 1, and Clark was employed as a Corrections Officer 2. Plaintiff was transferred to F-block from the Restricted Housing Unit on May 17, 2005.  In his deposition, Plaintiff testified that while in the RHU he was denied bottom bunk clearance.[1] Plaintiff asked two (2) physician's assistants while in the RHU about getting the desired clearance.  Neither Defendant Sipe or Defendant Clark were working in the RHU while Plaintiff was there.

---

[1] In the complaint, Plaintiff states that he sustained a bruised forehead and whiplash with regard to a vehicle accident he was involved in while being transported to SCI-Coal Township by the Allegheny County Sheriff Department.  The lower bunk request was apparently related to said injuries.

3

F-block is a general population housing unit. In his capacity as a Corrections Officer 2, Defendant Clark was assigned to the F-block during the time in question. He is not a medical professional and has no medical training. He first encountered Plaintiff when he was transferred to F-block. Clark was not involved in placing Plaintiff on F-block or assigning him as a block worker. He did assign Plaintiff his position as a window washer on the block - a job which was not strenuous. The job involved carrying cleaning rags and/or paper towels and a spray bottle. On occasion, Plaintiff had to carry empty buckets upstairs to the top tier of F-block where there was a water closet. Plaintiff did not have to carry any full buckets down the stairs.

Although Plaintiff claimed he was under medical restrictions, Clark never saw any documentation which prohibited him from working on the block. Clark also did not have access to Plaintiff's medical records, as they are confidential, and had no access to computers while on the block. Plaintiff never reported any injuries to Clark while on F-block and never appeared to be in pain or experiencing any physical difficulty while in Clark's presence. Clark also never threatened Plaintiff if he failed to perform the block job.

Defendant Sipe was employed on F-block as a Corrections Officer 1 during the relevant time period. He had no firsthand knowledge of Plaintiff's injury while housed in the RHU, as Sipe neither worked in the RHU or witnessed Plaintiff fall. Sipe is not a medical professional and does not have medical training. Sipe first encountered Plaintiff upon his transfer to F-block. He did not have much interaction with Plaintiff while he was confined on F-block, and was not working on many of the dates set forth in Plaintiff's complaint. He was not involved in the decision to place Plaintiff on F-block and was not involved in assigning Jackson as a block worker or to a block job while there. While Plaintiff alleges he spoke to Clark and Sipe on May 25, 2005, concerning his

4

medical restrictions, Sipe was a yard officer in the West Compound on that date.  While he did have a meal relief assignment on F-block that day, it lasted only 30 minutes and no conversations occurred with Plaintiff.  Sipe also did not work on F-block on July 9, 2005 and July 16, 2005.

Sipe was aware that Plaintiff was assigned a block job, but never actually saw him working on the block.  He states, however, that if Plaintiff did cell cleaning, he would only have carried empty buckets up the stairs to the top tier of F-block.  According to Sipe, staff never required workers to carry full buckets of water up the stairs.  While Plaintiff did complain to him about his job assignment, he never appeared in pain or produced any paperwork concerning any medical restrictions.  Sipe did not have access to Plaintiff's medical records because they are confidential and block officers do not have access to computers while on the block.

In his deposition Plaintiff states that he first encountered Defendants Sipe and Clark when he was transferred to F-block.  He states that while on F-block, he only had to carry a bucket 4 to 6 times, and only on a Saturday.  He also states that he was seen by medical personnel while on the F-block and was eventually removed from the block job assignment in July of 2004, following a letter written by his attorney to the Superintendent of the prison.

**C.     Analysis**

Plaintiff claims that Defendants Sipe and Clark violated his Eighth Amendment right to adequate medical care by making him perform a prison job despite his medical restriction of no work or heavy lifting.  In Rouse v. Plantier, 182 F.3d 192 (3d Cir. 1999), the Court of Appeals for the Third Circuit set forth the standard necessary to establish a claim for deliberate indifference to a prisoner's medical needs. The Court stated:

> The Eighth Amendment prohibits the imposition of unnecessary and wanton infliction of pain contrary to contemporary standards of decency. In Estelle v.

5

> Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), the Supreme Court held that the Eighth Amendment's prohibition against cruel and unusual punishment requires prison officials to provide basic medical treatment to those whom it has incarcerated. The Court articulated the standard to be used: In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment. Id. at 106, 97 S.Ct. 285. Therefore, to succeed under these principles, plaintiffs must demonstrate (1) that the defendants were deliberately indifferent to their medical needs and (2) that those needs were serious.... It is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute "deliberate indifference." As the Estelle Court noted: "[I]n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind,'" Id. at 105, 97 S.Ct. 285... Deliberate indifference, therefore, requires obduracy and wantonness . . . which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk.. . . .

Id. at 197 (Some internal citations and quotations omitted).

Based upon the undisputed facts as set forth above, it is clear that summary judgment is warranted in favor of Defendants. Defendants Sipe and Clark had no knowledge of the prior injuries sustained while Plaintiff was housed in the RHU. They never encountered Plaintiff until his transfer to F-block on May 17, 2005. Plaintiff was approved to be a block worker by someone other than Defendants. There is no evidence in the record that Defendants were ever provided with any verification of Plaintiff's alleged medical restrictions. While it is undisputed that following being assigned a block job Plaintiff complained to both Defendants, they had no paperwork establishing that Plaintiff could not hold a block job. Further, they did not have access to Plaintiff's medical files as block officers, because they were confidential, and had no access to the computer while working on the block.

Further, even assuming Defendants had been aware of the medical restrictions, the undisputed facts do not establish that Defendants' actions were sufficiently harmful to evidence

deliberate indifference.  The undisputed facts show that he Clark was given the position of a window washer which only required carrying rags and/or paper towels and a spray bottle.  To the extent a bucket ever had to be carried, which by Plaintiff's own admission was only 4-6 times, the bucket was empty.  He never carried buckets full of water.  This type of non-strenuous job in combination with the facts that Plaintiff never reported any injuries to Defendants or appeared in pain, and was also seen periodically by medical staff while on F-block, adds further support that Plaintiff has failed to establish the requisite degree of harm necessary to evidence deliberate indifference on the part of Defendants.   An appropriate Order follows.

**IV.** **Order**

**AND NOW, THEREFORE, THIS 9th   DAY OF APRIL, 2007,** in accordance with the foregoing Memorandum, **IT IS HEREBY ORDERED AS FOLLOWS:**

1. The motion for summary judgment filed by Defendants Sipe and Clark (Doc. 59) is GRANTED and judgment is entered in favor of these Defendants and against the Plaintiff.

2. The Clerk of Court is directed to CLOSE this case.

3. Any appeal from this Order will be deemed frivolous, lacking in probable cause and not taken in good faith.

s/ Yvette Kane
YVETTE KANE, Chief Judge
Middle District of Pennsylvania